# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CLAXTON H. WILLIAMS, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 06-cv-772-MJR |
| ) | |
| **ROD R. BLAGOJEVICH,** ) | |
| **RONALD MEEK, ROGER E. WALKER,** ) | |
| **CHARLES HENSLEY,** ) | |
| **ALAN UCHTMAN, WILLIAM SPILLER,** ) | |
| **M.D FAISAL AHMED, J. WITHOFT,** ) | |
| **J. INMAN, ROBINSON, SGT. CARTER,** ) | |
| **C/O FRITZ, and C/O MURRAY,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

**REAGAN, District Judge:**

### I.   Factual and Procedural Background

Claxton H. Williams, Jr., an inmate in the custody of the Illinois Department of Corrections (IDOC), currently incarcerated at Menard Correctional Center, brings this action for deprivation of rights secured to him by the United States Constitution.

By prior order, the Court distilled Williams's voluminous complaint - as to Defendants Rod R. Blagojevich, Ronald Meek, Roger E. Walker, Charles Hinsley, Alan Uchtman, William Spiller, Jerry Witthoft, John Inman, Ronald Robinson, John Carter, Joshua Fritz and Kevin Murray[1] - into four Counts:

Count 1:   Against Defendants Robinson, Witthoft and Carter for using excessive force on Williams in violation of the Eighth Amendment;

---

[1] The complaint misspells several of the defendant's names, or reflects only partial names. "Charles Hensley" is Charles Hinsley; "J. Withoft" is Jerry Witthoft; "J. Inman" is John Inman; "Robinson" is Ronald Robinson; "Sgt. Carter" is John Carter; "C/O Fritz" is Joshua Fritz; and "C/O Murray" is Kevin Murray.

> Count 2: Against Defendants Robinson, Witthoft, Carter, Fritz and Murray for retaliating against Williams by beating or harassing him for filing grievances concerning the prison's "palms out" handcuffing policy;
>
> Count 3: Against Defendants Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich, for having knowledge of the actions committed by Defendants in Counts 1 and 2, giving those Defendants a free hand and failing to take corrective actions; and
>
> Count 5: Against Defendant Robinson for denying Williams adequate medical treatment in violation of the Eighth Amendment.

(Docs. 1 and 13).

The following factual allegations and undisputed documentary evidence underpin the claims at issue.

After being transferred from Stateville Correctional Center to Menard Correctional Center in February 2004, Williams learned that Menard officials would not honor a medical permit he had obtained at Stateville that allowed him to be handcuffed in a manner other than the usual "palms out" position. Correctional Officers Murray and Essray repeatedly clashed with Williams over the cuffing issue, and Williams was not allowed to shower unless he complied with the "palms out" procedure. Williams attempted to get Menard doctors to issue a special cuffing permit but was not successful until August 4, 2004.

Williams filed an initial grievance on March 4, 2004, regarding C/O Murray's refusing to recognize his Stateville cuffing permit and denying him showers, purportedly in retaliation for "what occured [sic] at Stateville." (Doc. 83-2, pp. 1-2). On May 28, 2004, Williams lodged another grievance regarding the cuffing policy and denial of showers, generally reiterating his clashes with C/O Murray over the issue. (Doc. 83-2, pp. 10-11). An additional grievance regarding C/O Murray, the cuffing policy and denial of showers was filed on June 25,

2

2004, adding allegations that Murray was also getting other guards to do his bidding. (Doc. 96-1, pp. 19-20).

Williams contends that when he was granted a "double cuff" permit on August 4, 2004, his position was vindicated - which motivated correctional officers Robinson, Essray, Witthoft Carter, and Kishier to brutally assault him on August 6, 2004, in violation of both the Eighth and First Amendments. (*See* Doc. 96, p.1; 83-2, pp. 12-18). According to Williams, the retaliation continued after he filed a grievance on August 6, 2004, regarding the beating he had received. (Doc. 83-1, pp. 12-18).

Williams submits that he was also subjected to retaliation for filing the May 28, 2004, grievance, in that he was allegedly denied medical care by Robinson, served food trays with dirt and spit on them, and verbally harassed and manhandled by Essray, Murray, Robinson, Fritz and Witthoft.

Williams further contends that Defendants Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich all had actual knowledge of the aforementioned excessive force and retaliation, but permitted it to occur and failed to take corrective action.

According to Williams, all letters and grievances that he submitted regarding the issues in this case passed through Inman - who was cellhouse superintendent - and Inman had "general knowledge" of what was occurring. (Doc. 83-1, p. 13). Williams's March 11, 2004, grievance appears to have been reviewed by Assistant Warden of Security, Alan Uchtman, but Uchtman's signature appears to have been made by someone else (whose initials appear to be "LMC"). (Doc. 83-1, p. 14; Doc. 83-2, p. 8). Assistant Warden of Programs William Spiller was in charge of the Adjustment Committee that found Williams guilty of a disciplinary infraction stemming from the August 6, 2004, incident. (Doc. 83-1, p. 15). However, Williams

3

admits that Spiller was not on the Committee that decided his disciplinary case, and Williams does not know what other relevant knowledge Spiller may have had.[2] (Doc. 83-1, p. 15). Warden Charles Hinsley was "cc'd" by an IDOC official and apparently was sent copies of a letter from Williams to Governor Blagojevich regarding Williams's March 11, 2004, grievance. (Doc. 83-2, p. 9; 83-1, p. 16). According to Williams, all grievances went through Warden Hinsley; in addition, Williams sent Hinsley letters and affidavits, and met with him in December 2004. (Doc. 83-1, pp. 17-18). IDOC Director Roger E. Walker, Jr., wrote to Williams acknowledging receipt of Williams's March 4, 2004, grievance, although Williams is unsure of what Walker actually receives and who may sign correspondence on his behalf. (Doc. 83-2, p. 5; Doc. 83-1, p. 18). Williams testified that he met with Warden Hinsley and IDOC Deputy Director Ronald Meek in December 2004 to discuss the August 6 incident. (Doc. 83-1, pp. 19 and 22). Williams notes that correspondence shows that his letter to Governor Blagojevich was received in the Governor's office and was then sent to IDOC Deputy Director Meek, who sent a copy to Warden Hinsley. (Doc. 96-1, pp. 75-79). Williams testified that he sued Blagojevich because Blagojevich has statutory authority to visit any prison where there are complaints. (Doc. 83-1, p. 19).

Defendants Rod R. Blagojevich, Ronald Meek, Roger E. Walker, Charles Hinsley, Alan Uchtman, William Spiller, Jerry Witthoft, John Inman, Ronald Robinson, John Carter, Joshua Fritz and Kevin Murray seek summary judgment on Williams's claims against them. (Doc. 82). In response, Williams filed an "affidavit"/"statement of disputed factual issues." (Doc. 96). Defendants filed a reply, claiming that Williams's response raises a new

---

[2]Williams makes the broad statement "I wrote them," while discussing Spiller during his deposition, but Williams does not make explicit that he wrote to Spiller. (Doc. 83-1, p. 15).

conspiracy claim against Defendants Robinson, Witthoft, Carter and Kishier (who has already been dismissed as Defendant herein). (Doc. 98). Defendants Robinson, Witthoft and Fritz have submitted affidavits reflecting that they did not "receive or review" grievances filed by Williams, and did not retaliate against Williams, or beat or harass him.[3] (Doc. 83-3, pp. 1-4).

For the sake of clarity, the Court summarizes Defendants' grounds for summary judgment as follows:

1. Defendants Robinson, Witthoft, Carter, Fritz and Murray assert that Williams has no evidence that they were notified of Williams's grievances dated March 4, 2004, March 11, 2004, May 28, 2004, and August 6, 2004, and no evidence the Defendants retaliated against Williams for filing those grievances;

2. Defendants Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich assert that they did not fail to protect Williams from a "pattern" of abuse; rather, proof has only been offered of a single incident of abuse on August 6, 2004, by Robinson, Witthoft, Carter, (former defendant) Kishier and Murray;

3. Defendants Hinsley, Spiller, Inman, Uchtman, Walker and Blagojevich submit that they had no prior knowledge of assaultive behavior or a specific, impending and substantial risk of assault prior to the August 6, 2004, incident;

4. Defendants Hinsley, Spiller, Inman, Uchtman, Walker and Blagojevich contend that they cannot be held liable merely because they are supervisory officials, and there is no evidence they had any personal knowledge of Williams's allegations that staff exposed him to known risks of physical harm;

5. Defendant Robinson contends that he had no personal involvement in the deliberate indifference to Williams's alleged serious medical condition alleged in Count 5;

6. Defendants maintain that they are entitled to qualified immunity; and

---

[3] Defendants Carter and Murray submitted similar affidavits, but they are not considered by the Court because the affidavits are unsigned. (Doc. 83-3, pp. 5-7).

       7.       Defendants assert that Williams is not entitled to declaratory or injunctive relief.

(Doc. 83).

Williams contends, generally, that there are questions of material fact that preclude summary judgment. (Doc. 96). He maintains that many specifics of the complaint have not been addressed by Defendants.

## II.    Legal Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED.R.CIV.P. 56(c)**; *see Celotex Corp. v. Catrett,* **477 U.S. 317, 322 (1986)**; *Spath v. Hayes Wheels Int'l-Ind., Inc.,* **211 F.3d 392, 396 (7th Cir. 2000)**. In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986)**; *Spath,* **211 F.3d at 396**.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison,* **446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted);** *Celotex,* **477 U.S. at 322-326;** *Johnson v. City of Fort Wayne,* **91 F.3d 922, 931 (7th Cir. 1996)**. Put more bluntly, summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers,* **486 F.3d 1017, 1022 (7th Cir. 2007)**.

### III. Analysis

#### A. Count 2 - Retaliation

Count 2 alleges that Defendants Robinson, Witthoft, Carter, Fritz and Murray retaliated against Williams by beating or harassing him for filing grievances concerning the prison's "palms out" handcuffing policy.

It is well established that prison officials violate the First Amendment when they retaliate against a prisoner for filing grievances or initiating lawsuits. ***Bounds v. Smith,* 430 U.S. 817, 821 (1977);** ***Walker v. Thompson,* 288 F.3d 1005, 1008-09 (7th Cir. 2002)**. Retaliation for filing a lawsuit "offends the Constitution" because it inhibits individuals from exercising a protected right. ***Crawford-El v. Britton,* 523 U.S. 589 n. 10 (1998)**.

To establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) the plaintiff engaged in constitutionally-protected speech; (2) the plaintiff suffered a deprivation likely to deter the free exercise of his First Amendment rights; and (3) the plaintiff's speech was a but-for cause of the defendant's retaliation. ***Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (describing the elements of First Amendment retaliation in the employment context);** ***Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009) (recognizing that the United States Supreme Court has rejected the former standard that the plaintiff's speech could be a "motivating" factor; under the new standard, unless a statute provides otherwise, the plaintiff must establish but-for causation in all suits under federal law) (citing *Gross v. FBL Financial Services, Inc*., --- U.S. ----, 129 S.Ct. 2343, 2351 (2009))**.

To establish a claim of retaliation for exercising free speech, an inmate must present evidence that his free speech, *i.e.*, filing grievances, was a but-for cause of the retaliation.

7

***Gross*ND, 129 S.Ct. at 2351; *Fairley*, 578 F.3d 518, 525 (7th Cir. 2009) ("Some decisions ... say that a plaintiff just needs to show that his speech was a motivating factor in defendant's decision. These decisions do not survive *Gross*, which holds that, unless a statute ... provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law.")**. Furthermore, in order to show that protected conduct caused a retaliatory deprivation, a plaintiff must first show that the defendants knew of his protected conduct. ***Gunville v. Walker*, 583 F.3d 979, 984 (7th Cir. 2009) (citing *Nelms v. Modisett*, 153 F.3d 815, 819 (7th Cir. 1998)**.

Defendants Robinson, Witthoft, Carter, Fritz and Murray assert that Williams has no evidence that they were notified of his grievances dated March 4, 2004, March 11, 2004, May 28, 2004, and August 6, 2004, and no evidence that Defendants retaliated against him for filing those grievances. There is no dispute that Williams lodged the aforementioned grievances.[4] At this juncture, the Court is left with the competing affidavits of Williams and Defendants Robinson, Witthoft and Fritz. Robinson, Witthoft and Fritz swear that they did not "receive or review" grievances filed by Williams, and did not retaliate against Williams, or beat or harass him. They do not address whether they otherwise had knowledge of Williams's grievances. A litigant's affidavit, based on personal knowledge, is sufficient to create a factual dispute. *See Holmes v. Village of Hoffman Estate,* **511 F.3d 673, 680 (7th Cir. 2007)**. The credibility determinations and inferences necessary for evaluating Williams's retaliation claim is left to the

---

[4] Defendants make much of the fact that Williams did not even lodge a grievance against Defendants Robinson, Witthoft, Carter and Fritz until after the August 6, 2004, assault. However, there is no requirement that a defendant be retaliating for litigations or grievances lodged against that defendant.

trier of fact and cannot be determined at the summary judgment stage. Therefore, Defendants Robinson, Witthoft, Carter, Fritz and Murray are not entitled to summary judgment on Count 2.

### B.    Count 3 - Failure to Intervene

Count 3 alleges that Defendants Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich had knowledge of the actions committed by Defendants in Counts 1 and 2, gave those Defendants a free hand and failed to take corrective actions. Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich argue that they did not fail to protect Williams from a "pattern" of abuse; rather, proof has only been offered of a single incident of abuse on August 6, 2004, by Robinson, Witthoft, Carter, (former defendant) Kishier and Murray. At the heart of their argument is the contention that they cannot be held liable merely because of their supervisory positions.

In *Duckworth v. Franzen,* **780 F.2d 645, 652-53 (7th Cir. 1985)**, the Court of Appeals for the Seventh Circuit emphasized that "the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if the prison official had "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.* A prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. *McGill v. Duckworth,* **944 F.2d 344, 349 (7th Cir. 1991)**.

The Seventh Circuit, in *Wolf-Lillie v. Sonquist*, **699 F.2d 864 (7th Cir. 1983)**, stressed that "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a [Section] 1983 action unless he caused or participated in an alleged constitutional deprivation." **699 F.2d at 869;** *see also McBride v. Soos*, **679 F.2d 1223, 1227 (7th Cir. 1982)**. Accordingly, liability under § 1983 cannot be based

on the doctrine of *respondeat superior*. **See *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)**.

> A defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." [*Chavez v. ISP*, 251 F.3d 612, 652 (7th Cir. 2001).] This definition recognizes that the individual does not have to have participated directly in the deprivation. *See McPhaul v. Board of Comm'rs of Madison Co.*, 226 F.3d 558, 566 (7th Cir. 2000) (quotation omitted). Thus, a supervisor may be liable for "deliberate, reckless indifference" to the misconduct of subordinates. *See Chavez*, 251 F.3d at 651. ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.") (quotations omitted).

***Sanville v. McGaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)**.

As a preliminary matter, the Court observes that it is not entirely clear whether Defendants properly appreciate the scope of Count 3. Williams is alleging that Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich failed to prevent the retaliatory excessive force on August 6, 2004, *and* other retaliatory harassment relating to the denial of medical care and the conditions of Williams's confinement post-assault. However, Defendants correctly observe that Williams's allegations of a "pattern" do not pertain to them, to Counts 1 and 2, or to what happened to Williams personally. Rather, the "pattern" to which Williams refers is a pattern of racial discrimination at Stateville Correctional Center, Menard Correctional Center and other IDOC facilities.

Williams's deposition makes clear that he sued Defendants Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich primarily because of their supervisory positions. However, Williams's correspondence and/or grievances may have been reviewed by these Defendants; and he had a discussion with Meek and Hinsley. Without affidavits from the Defendants or others with knowledge of who viewed the documentation, the Court cannot grant

10

summary judgment based on a lack of personal involvement, although Williams appears to be on extremely shaky ground. *See Crowder v. Lash*, **687 F.2d 996, 1006 (7th Cir. 1982) (Director of state correctional agency  not personally responsible for constitutional violations within the prison system merely because grievance procedure made him aware of it and he failed to intervene)**.

Nevertheless, Williams's theory of liability fails because there is no evidence that Williams's correspondence, grievances or discussions conveyed any information from which Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich could reasonably infer that there was an impending harm akin to the retaliatory, excessive force allegedly used against Williams, or that, subsequent to the August 6, 2004, assault, Williams would be subjected to retaliatory, adverse conditions of confinement as alleged.  At best, Williams has alleged that these supervisory Defendants were negligent in performing their jobs, but a defendant can never be held liable under § 1983 for negligence. *See Daniels v. Williams,* **474 U.S. 327, 328 (1986);** *Zarnes v. Rhodes,* **64 F.3d 285, 290 (7th Cir. 1995)**.  For this reason, Defendants Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich are entitled to summary judgment on Count 3.

### C. Count 5 - Defendant Robinson

Defendant Ronald Robinson is named in Count 5, which alleges that Williams was denied proper medical care in violation of the Eighth Amendment.  In his deposition, Williams acknowledges that it was a person named Riggleman, not Robinson, who denied him medical care.  (Doc. 83-1, p. 22).  Williams's response to the subject motion does not dispute that Robinson has no place in Count 5.   Therefore, Defendant Robinson is entitled to summary judgment on Count 5.

### D. Qualified Immunity

All Defendants assert that they are entitled to qualified immunity, in that finding them liable under the facts alleged would go beyond clearly established precedents. Qualified immunity shields officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* **457 U.S. 800, 818 (1982)**.

At this juncture, this argument appears applicable only to Counts 1 and 2. Factual issues preclude summary judgment and also prevent analysis of the applicability of qualified immunity. Defendants are free to assert qualified immunity at trial.

### E. Declaratory and Injunctive Relief

Defendants argue that the Court may not grant Williams injunctive relief because Williams is no longer housed at Menard Correctional Center and because there is no evidence of an ongoing violation. Defendants further contend that the Eleventh Amendment precludes "equitable restitution" against Defendants, insofar as they are sued in their official capacities.

Money damages may only be sought from Defendants individually; official capacity suits are actually suits against the State, and the Eleventh Amendment bars such actions for damages. *Kentucky v. Graham*, **473 U.S. 159, 166-67, 169 (1985)**. As a result, Defendants are entitled to summary judgment on this aspect of Williams's prayer for relief.

Official capacity suits under § 1983 for *prospective* injunctive relief are permissible. *Owen v. Lash,* **682 F.2d 648, 654 (7th Cir. 1982) (quoting** *Edelman v. Jordan,* **415 U.S. 651, 677 (1973) (citing** *Ex parte Young,* **209 U.S. 123 (1908);** *Ford Motor Co. v. Dept. of Treasury,* **323 U.S. 459 (1945)) (internal citations and quotation marks omitted)**. However, the harm must be capable of repetition and likely to embroil the same parties; mere

speculation is insufficient. *See Knox v. McGinnis*, **998 F.2d 1405, 1414 (7th Cir. 1993)**. Although as of this date Williams is housed once again at Menard, there is nothing more than speculation that the harm that befell him is capable of repetition. Therefore, Defendants are entitled to summary judgment on this aspect of Williams's prayer for relief.

### IV.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment (Doc. 82) filed by Defendants Rod R. Blagojevich, Ronald Meek, Roger E. Walker, Charles Hinsley, Alan Uchtman, William Spiller, Jerry Witthoft, John Inman, Ronald Robinson, John Carter, Joshua Fritz and Kevin Murray. First, the Court **GRANTS** summary judgment to Defendants Inman, Uchtman, Spiller, Hinsley, Walker, Meek and Blagojevich on Count 3. Because this is the only Count pending against these Defendants, they are **DISMISSED** with prejudice, and the Clerk of Court shall enter judgment in favor of these Defendants at the close of the case. Second, the Court **GRANTS** summary judgment to Defendant Robinson on Count 5; however, he remains a Defendant in this action as to Counts 1 and 2. Third, the Court **GRANTS** summary judgment to all Defendants, insofar as they are sued in their official capacities, on Williams's prayers for monetary damages and for prospective injunctive relief.

The action remains set for trial on July 12, 2010, at 9:00 a.m., on Count 1 against Defendants Robinson, Witthoft and Carter and Count 2 against Defendants Robinson, Witthoft, Carter, Fritz and Murray. Additionally, this action presently remains pending on Count 5 against Defendant Ahmed, who has filed a motion for summary judgment that is addressed by separate order.

**IT IS SO ORDERED.**

**DATED this 4th day of February, 2010**

                                                <u>**s/Michael J. Reagan**</u>
                                                **MICHAEL J. REAGAN**
                                                **United States District Judge**