IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLAXTON H. WILLIAMS, JR., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   No. 06-cv-0772-MJR |
| | ) |
| ROD R. BLAGOJEVICH, | ) |
| RONALD MEEK, ROGER E. WALKER, | ) |
| CHARLES HENSLEY, | ) |
| ALAN UCHTMAN, WILLIAM SPILLER, | ) |
| M.D. FAISAL AHMED, J. WITHOFT, | ) |
| J. INMAN, ROBINSON, SGT. CARTER, | ) |
| C/O FRITZ and C/O MURRAY, | ) |
| | ) |
|    Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

    **I.**    **Factual and Procedural Background**

Claxton H. Williams, Jr., an inmate previously incarcerated at Stateville Correctional Center and currently incarcerated at Menard Correctional Center, brings this action for deprivation of rights pursuant to 42 U.S.C. § 1983. The Court, in its threshold order, construed Williams's complaint as alleging that Dr. Ahmed, a physician working at Menard, denied Williams adequate medical care in violation of the Eighth Amendment (Count 5). (*See* Docs. 1, 13).

According to the complaint, because of an injury to Williams's left shoulder and both wrists, his doctors at Stateville gave him a permit to be handcuffed "palms in" behind his back and exempting him from being cuffed "palms out." (Doc. 1, p. 8). When Williams was transferred to Menard on February 17, 2004, guards insisted on handcuffing him with arms behind his back, "palms out." On March 11, 2004, he spoke to Dr. Ahmed about the "palms

out" policy at Menard.  According to Williams, Dr. Ahmed stated, "You will receive no treatment here.  I don't care what U.I.C. specialists recommend."  (Doc. 1, p.. 8).  Dr. Ahmed purportedly refused to even examine Williams or discuss the issue, saying, "You don't look as if you're in pain.  Please leave."  *Id.*  On August 3, 2004, Dr. Ahmed instructed that Williams be allowed to be cuffed "palms in"; ultimately, a medical permit was issued by staff, on Dr. Ahmed's behalf, allowing Williams to be "double cuffed" in back for one year, based on a diagnosis of left shoulder pain.  (Doc. 1, pp. 31-32; Doc. 1-3, p. 9).

On August 6, 2004, after allegedly being beaten by guards, Williams was taken to the prison hospital in a wheelchair, passing in and out of consciousness along the way.  (Doc. 1, pp. 26, 32).  According to Williams, he was bruised and bleeding, having been kicked, hit and stomped on - principally injuring his head, kidneys and wrists.  *Id.*  Williams was also having trouble breathing, and his chest hurt.  (Doc. 1, p. 32).  Williams alleges that Dr. Ahmed only performed an EKG and refused to document his injuries, telling Williams, "You'll heal."  (Doc. 1, pp. 26-27; Doc. 1-1, p. 1).  When Williams told Dr. Ahmed he had kidney pain, his hip was bleeding and his ears hurt, Dr. Ahmed said, "You"ll heal after awhile" and directed that Williams be taken back to his cell.  (Doc. 1-1, p. 1).[1]

Dr. Ahmed moves for summary judgment, contending that there is no evidence to support the claim of deliberate indifference.  (Doc. 79).  He asserts that Williams has shown only a difference of opinion regarding his treatment and that there is no evidence of harm from any delay in treatment.

---

[1] The complaint alleges that Dr. Ahmed refused to treat Williams out of retaliation, but Williams does not indicate the basis for retaliation.  (Doc. 1-1, pp. 1, 13).  Consequently, the Court's threshold order (Doc. 13) did not recognize a retaliation claim against Dr. Ahmed.

In response to Dr. Ahmed's motion, Williams initially filed a letter with the Clerk of Court indicating that he desired an evidentiary hearing because he was unable to file a formal response due to the "oppressive" conditions of his imprisonment. (Doc. 91). Dr. Ahmed observed that Williams's letter/response merely made allegations that were fodder for a new civil rights complaint. However, Williams subsequently filed an "affidavit"/"statement of disputed factual issues," addressing Dr. Ahmed's motion and a motion for summary judgment filed by other Defendants. (Doc. 96). Thus, in accordance with Federal Rule of Civil Procedure 56, the Court will rule on Dr. Ahmed's motion based on the parties' briefs, pleadings, affidavits and other evidence submitted.

## II.    Legal Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED.R.CIV.P. 56(c);** *see Celotex Corp. v. Catrett,* **477 U.S. 317, 322 (1986);** *Spath v. Hayes Wheels Int'l-Ind., Inc.,* **211 F.3d 392, 396 (7th Cir. 2000)**. In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986);** *Spath,* **211 F.3d at 396**.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison,* **446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted);** *Celotex,* **477 U.S. at 322-326;**

*Johnson v. City of Fort Wayne,* **91 F.3d 922, 931 (7th Cir. 1996)**. Put more bluntly, summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers,* **486 F.3d 1017, 1022 (7th Cir. 2007)**.

### III. <u>Analysis</u>

Generally, the Eighth Amendment obligates prison officials to "provide humane conditions of confinement;.. [to] ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, **511 U.S. 825, 834 (1994) (quoting** *Hudson v. Palmer*, **468 U.S. 517, 526-27 (1984));** *see also Estelle v. Gamble*, **429 U.S. 97 (1976)**. The Eighth Amendment is violated when an official exhibits "deliberate indifference," *i.e.,* when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, **511 U.S. at 837**. This standard is subjective and is the equivalent of recklessness in the criminal law sense. *Id*.; *Steele v. Choi*, **82 F.3d 175, 179 (7th Cir. 1996)**.

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Farmer,* **511 U.S. at 842**.

The ultimate determination regarding the seriousness of an injury is best left to a healthcare professional, or the seriousness of the injury must be so obvious that even a lay

person would easily recognize the necessity for a healthcare professional's attention. *Davis v. Jones*, **936 F.2d 971, 972 (7th Cir. 1991)**; *see also Langston v. Peters*, **100 F.3d 1235, 1240 (7th Cir. 1996)**. In *Norfleet v. Webster*, **439 F.3d 392, 396 (7th Cir. 2006)**, the United States Court of Appeals for the Seventh Circuit noted that a difference of opinion between physicians cannot support a deliberate indifference claim, and the medical decision at issue must be "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, **439 F.3d at 396**. A showing of medical malpractice will not, alone, suffice. *See Estate of Cole Pardue v. Fromm,* **94 F.3d 254, 256 (7th Cir. 1996)**. Nor will mere negligence create liability. *Estelle*, **429 U.S. at 107**. However, delay in providing medical care may be sufficient for liability. *Kelley v. McGinnis*, **899 F.2d 612 (7th Cir. 1990)**.

### A.     Cuffing Permit

Dr. Ahmed acknowledges that Williams had a "palms in" permit at Stateville but presents documentation showing that the medical summary transmitted in connection with Williams's transfer to Menard does not reflect that Williams needed to be handcuffed in any special manner, or that he had a shoulder injury or any ailment that might suggest such a need. (Doc. 79, p. 4; Doc. 1-1, p. 8). Williams saw a correctional medical technician (CMT) upon intake and did complain of damaged nerves in his left shoulder and both hands, for which he was referred to a doctor. (Doc. 79-1, p. 9). According to Dr. Ahmed's affidavit, Williams was seen on March 10, 2004, and the doctor's notes make no reference to any nerve, shoulder or hand conditions. (Doc. 79-1, p. 3).

Medical records indicate that Williams saw Dr. Ahmed on March 11, 2004, and requested a "double cuff" permit, but Dr. Ahmed did not find any medical indication for such a

5

permit. (Doc. 79-1, pp. 13-14). Examination notes indicate that Williams was comfortable with cuffs in the back. (Doc. 79-1, p. 14). On June 16, 2004, Williams asked Dr. Ahmed for a "cuff in front" permit, but the doctor noted that Williams was cuffed in back without any problem. (Doc. 79-1, p. 15). On August 3, 2004, Williams requested a "palms in" permit. (Doc. 79-1, p. 16). However, the doctor noted that Williams had no objection to being cuffed in back, *except* in the "palms out" position. Williams acknowledged that he had never had an X-ray of his left shoulder. *Id*. Dr. Ahmed found Williams's left shoulder range of motion was intact and directed that Williams was to be cuffed in back with double cuffs for one year. *Id*. The same notation was apparently originally written, cuff inward back with palms in for one year, but the "palms inward" was scratched out and initialed by Dr. Ahmed. *Id*. Dr. Ahmed explains in his affidavit that he originally wrote that Williams should be cuffed "palms inward," but changed the order to "double cuffs," in order to allow Williams more freedom of movement for his shoulder, while still limiting, for security reasons, Williams's ability to access the locks on the handcuffs with his fingers. (Doc. 79-1, p. 5).[2]

      Williams contends that the fact that Dr. Ahmed denied a special cuffing permit in March but changed his mind and issued a permit in August creates a material question of fact which precludes summary judgment, because Dr. Ahmed has not addressed this discrepancy. (Doc. 96, p. 2).

      At this juncture, the Court views the evidence in the light most favorable to Williams. Thus, the Court will assume Williams was in pain when cuffed in the back "palms

---

[2] Referencing Exhibit 8 (Doc. 79-1, p. 17), Dr. Ahmed states in his affidavit that Williams complained about the permit the next day, and that Dr. Ahmed's plan was to follow-up. (Doc. 79-1, p. 5). Exhibit 8 does *not* mention the cuffing issue.

out."  Nevertheless, insofar as it could be argued that Dr. Ahmed should have reviewed Williams's whole file to determine upon what basis the permit had been issued at Stateville, the fact that Williams was issued a "palms in" permit at Stateville, but was initially denied such a permit by Dr. Ahmed, merely constitutes a difference of medical opinion, or at best medical negligence.  There are no allegations of pain or injury to show that Dr. Ahmed's decision was so far afield from acceptable professional standards as to raise the inference that it was not actually based on a medical judgment.  *See Duckworth v. Ahmad*, **532 F.3d 675, 679 (7th Cir. 2008)**.  Even assuming that Dr. Ahmed turned Williams away on March 11, 2004, the transfer paperwork and the evaluation by another doctor one day before did not reflect any injuries relevant to the cuffing issue, so it was not an unreasonable medical decision for Dr. Ahmed to rebuff Williams's request for a permit, after observing that he appeared "comfortable."  Similarly, in June, Dr. Ahmed observed that Williams was cuffed in the back without any problem.

      Dr. Ahmed's subsequent decision in August 2004 to issue a "double cuff" permit merely reflects his evaluation at that time - a compromise of sorts between Williams's subjective complaints, the doctor's medical evaluation and security concerns.  Dr. Ahmed accepted Williams's proffer about his injuries and need for an accommodation, even though Williams had not had his left shoulder X-rayed, which certainly belies any claim of deliberate indifference.  Williams has not specifically addressed the delay in issuing a "double cuff" permit, but none of the aforementioned evidence supports liability based on delay.  Therefore, summary judgment is warranted on this aspect of Count 5.

### B.      August 6, 2004, Injuries

Medical records reflect that on August 6, 2004, after Williams was in an altercation, he was seen by a CMT because of chest pain and difficulty breathing. (Doc. 79-1, pp. 5, 18). Williams was described as "alt in comfort," and no other medical issues or injuries are noted, but a doctor was to be notified. (Doc. 79-1, p. 18). Williams was immediately seen by Dr. Ahmed. (Doc. 79-1, p. 19). A painful right hypochondrium was observed; however, no fractures were felt and no bruising or bleeding.[3] (Doc. 79-1, pp. 6, 19). An EKG and examination revealed some cardiovascular abnormalities, but Dr. Ahmed did not find them to be cause for concern. *Id*. Blood work was also ordered. *Id.* Mild muscle tenderness and pain were found, and Tylenol was prescribed with a follow-up ordered. *Id*. According to Dr. Ahmed's affidavit, if other injuries had been observed, they would have been recorded. (Doc. 79-1, pp. 6-7).

Williams argues that Dr. Ahmed's failure to evaluate and treat him on March 11, 2004, establishes a pattern of behavior seen again on August 6, 2004, when Dr. Ahmed intentionally refused to document visible injuries. (Doc. 96, p. 4).[4] Even viewing the evidence in the light most favorable to Williams, his allegations are conclusory and without acceptable

---

[3]The hypochondrium is the upper right region of the abdomen. http://merckmedicus.com (last visited 2/4/10).

[4]Williams cites his allegations in various grievances as proof of the matters asserted and as creating material questions of fact. Grievances constitute inadmissible hearsay and cannot alone be used to effectively counter Dr. Ahmed's affidavit and the medical records. ***See, e.g., Eisenstadt v. Centel Corp*., 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial ... except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed....")**. Therefore, Williams's grievances will not be discussed further.

evidentiary support.  Any previous failure to treat is not admissible proof as to whether Dr. Ahmed failed to document and treat serious medical needs on August 6, 2004.  **FED.R.EVID. 404(b)**; *see also Gates v. Rivera*, **993 F.2d 697, 700 (9th Cir. 1993)**.

Moreover, Williams has completely failed to address the CMT's evaluation, which was made prior to Williams being transported to the prison hospital on August 6, 2004. The CMT's report did not reflect any injuries of the nature now claimed by Williams.  In any event, Dr. Ahmed examined Williams, checking for broken bones and finding only muscle tenderness or pain, for which Tylenol was prescribed.  It is undisputed that Dr. Ahmed ran tests and treated Williams's breathing and heart issues.  As noted above, medical negligence/ malpractice, alone, in failing to observe, document and treat a serious medical need is not sufficient for constitutional liability.  Williams has simply not "put up" sufficient evidence to bolster his claim of deliberate indifference.  Therefore, Dr. Ahmed is also entitled to summary judgment on this aspect of Count 5.

For the foregoing reasons, the Court **GRANTS** Dr. Ahmed's motion for summary judgment on Count 5 (Doc. 79).  Because this is the only claim lodged against Dr. Ahmed, he is **DISMISSED** as a Defendant in this action, and final judgment shall enter in his favor at the conclusion of litigation.

**IT IS SO ORDERED.**

**DATED this 4th day of February, 2010**

<u>s/Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**United States District Judge**